**In the Matter of Loren J. COMSTOCK.**

No. 49S00–9310–DI–1130.

Supreme Court of Indiana.

May 9, 1996.

Michael S. Reed, Indianapolis, for Respondent, Loren J. Comstock.

Donald R. Lundberg, Executive Secretary, Donna McCoy Spear, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

The respondent has been charged in a two-count *Amended Verified Complaint for Disciplinary Action* with violating the *Rules of Professional Conduct for Attorneys at Law.* The parties have tendered for our approval a *Statement of Circumstances and Conditional Agreement for Discipline* pursuant to Ind.Admission and Discipline Rule 23, Section 11(c), therein agreeing on the facts of this case and that a thirty-day suspension from the practice of law is an appropriate discipline. Upon examination of this prof-fered agreement, we conclude that it should be accepted and herein set forth the facts and circumstances of this case. At the outset, we note that the respondent was admitted to the bar of this state in 1972 and is currently an attorney in good standing. The fact of his admission to the bar is the basis for this Court's jurisdiction of this matter.

Pursuant to Count I, the parties agree that an individual (the "client") retained the respondent on May 30, 1992, to represent his interests in two matters. The client wanted the respondent to determine whether criminal charges were going to be filed against him and wanted the respondent to act as co-counsel in a civil case pending against him. After meeting again the next day, the client paid the respondent a retainer of $7,500, with the understanding that the respondent would bill against the retainer at a rate of $100 per hour. The client indicated that the attorney already handling the civil case would send the respondent copies of pleadings and certain depositions relative to the case.

Billing records indicate that the respondent placed two telephone calls on June 2, 1992, to learn if any criminal charges were pending against the client. Together, the calls lasted approximately four-tenths of an hour. Although the respondent learned that no charges had yet been filed, he did not so inform the client until June 30, 1992. On June 4, 1992, the client told the respondent that he would be in Florida from June 8 until June 12. On both June 8 and 9, the client telephoned the respondent to ask if he had yet received the civil case materials. The respondent told him he had not. The respondent's time records indicate that, on June 9, 1992, he drove to the Boone Circuit Court to review the civil case file, spending four and three-tenths hours to do so. Similarly, on June 11, 1992, he conducted research on the civil case at the Indiana University School of Law–Indianapolis for one and seven-tenths hours.

On June 13, 1992, the respondent traveled to Pismo Beach, California on other business and was not due back in Indiana until the end of June or early July 1992. On June 19, 1992, the respondent's secretary received the civil file materials and forwarded them to the

respondent. He received them on June 20, 1992. According to the respondent's time records, on June 19, 1992, he journeyed from Pismo Beach, California to a law school in Los Angeles in order to conduct research for his client's civil case. The billing for that service included six hours of driving time charged at $100 dollars per hour. Pismo Beach is approximately fifteen miles away from San Luis Obispo, California where there is a county law library containing Indiana materials. The respondent's time records indicate further that, while at the library in Los Angeles, the respondent worked on the civil case for six hours, despite not yet having received the civil case file materials. On June 20, 1992, the respondent spent four hours outlining a deposition for the case.

That same day, the client sent a certified letter to the respondent's Indiana law office indicating that he no longer wanted to employ the respondent and requesting return of the retainer. The letter arrived at the respondent's Indiana office on June 22, 1992. On June 23, 1992, the respondent again traveled from Pismo Beach to Los Angeles to conduct research for the civil case, billing six and one-half hours for research and six hours for driving time. He made a similar trip on June 24, devoting five and one-half hours to research and six hours to driving. That day, the client sent another certified letter directly to the respondent in Pismo Beach, informing him of the termination of representation and requesting return of the retainer. On June 25, the respondent reviewed the civil case file for two and one-tenth hours. On June 26, he received the termination letter from his client and billed one-tenth of an hour to review the letter. On July 28, 1992, more than one month following termination of the representation, the respondent traveled from Indianapolis to Boone County to review the civil file, billing for two hours of work. On July 30, 1992, the respondent sent a letter to the client indicating that although no criminal charges were "immediately forthcoming," the respondent could not guarantee that no criminal charges would ever issue. He also indicated that the client's retainer was for the criminal representation and, as such, nonrefundable because the respondent had completed the work the client had requested be done. Finally, the respondent informed the client that he still owed him $6,500, in addition to the $7,500 retainer already paid, for more than sixty hours of work on the civil case, contrary to the client's understanding of the fee arrangement. During the Commission's investigation, the respondent conceded that the client should not have been charged the entire retainer for a criminal matter that never materialized. The respondent also acknowledged that he had not used the entire retainer for work on both legal matters and that he owed the client approximately $1,200 of the original retainer.

 In its verified complaint, the Commission charged the respondent with violations of Ind.Professional Conduct Rules 1.5(a) and 1.16(d).[1] The respondent spent four-tenths of one hour making two telephone calls on his client's behalf in the criminal case and at-

---

1. Those rules provide:
 Prof.Cond.R. 1.5(a): A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the service; and
 (8) whether the fee is fixed or contingent.
 Prof.Cond.R. 1.16(d): Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

tempted to retain $7,500 for that service. At the initial meeting with his client, the respondent accepted the $7,500 retainer in contemplation of undertaking both criminal and civil representations. His later assertion that the retainer was for the criminal representation only was clearly contrary to the fee arrangement and grossly out of proportion with the time and effort expended on behalf of the client on the criminal matter. The respondent's billing records reveal that he charged his full rate for travel time to and from a distant law library to work on the civil case when another suitable law library was only minutes away, and even billed the client for reading the letter informing him of his termination. Incredibly, he thereafter billed the client for four and three-tenths hours of work done over one month after termination. He then informed his client that the service he provided in relation to the civil matter would cost the client an additional $6,500. These agreed facts clearly establish that the respondent violated Prof.Cond.R. 1.5(a) by charging an unreasonable fee. After termination of the representation, the respondent failed to refund the advance payment of fees that had not been earned and therefore violated Prof.Cond.R. 1.16(d).

As to Count II, the parties agree that a client retained the respondent on December 8, 1991, to pursue legal actions against General Motors ("GM") and United Auto Workers ("UAW") for alleged discriminatory practices. On December 27, 1991, the respondent filed suit against GM in federal district court. On February 10, 1992, the respondent filed suit against GM and UAW jointly in federal district court. General Motors was granted a dismissal in the second case on June 4, 1992. On July 30, 1992, GM sought summary judgment in the first case, which the respondent did not oppose. In fact, the re-

spondent filed a motion to voluntarily dismiss GM as a defendant in that case on September 1, 1992, which the court granted without prejudice on September 8, 1992. General Motors filed a motion to reconsider the order granting dismissal and managed to secure the dismissal with prejudice by order issued October 13, 1992. General Motor's actions met with no opposition by the respondent. The respondent did not inform his client of his decision not to oppose GM's motions to dismiss in either case and did not notify him of GM's eventual dismissal in the first case.

On March 16, 1993, UAW filed a motion for summary judgment in the second case, which the respondent did not oppose or discuss with his client. The UAW's motion was granted on May 11, 1993. The respondent failed to notify his client of the order granting summary judgment until May 25, 1993.

 The Commission alleges that the respondent violated Prof.Cond.R. 1.2(a), 1.3, and 1.4 by his conduct in Count II.[2] We find that the agreed facts establish that the respondent violated Prof.Cond.R. 1.2(a) by failing to abide by his client's decisions concerning the objectives of representation. By authorizing the respondent to file suit on his behalf, the client revealed an objective to seek legal redress for damages which he felt he had suffered at the hands of the defendants. The respondent allowed the defendants to obtain dismissal of both actions without consulting with his client about the impact of these events on the client's objectives. We also find that the respondent violated Prof.Cond.R. 1.3 in that he failed to act with reasonable diligence and promptness in representing his client. Specifically, the respondent failed to take any significant action at all in response to the defendant's efforts toward dismissal. Further, he violated Prof. Cond.R. 1.4(a) by failing to keep his client

---

2. Those rules provide, in relevant part:

Prof.Cond.R. 1.2(a): A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter ...

Prof.Cond.R. 1.3: A lawyer shall act with reasonable diligence and promptness in representing a client.

Prof.Cond.R. 1.4: (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

reasonably informed about the status of the cases and he violated 1.4(b) by failing to explain the matters to the extent reasonably necessary to permit his client to make informed decisions regarding the representation.

■ Having found misconduct, we now address the issue of proper sanction. In such analysis, this Court examines factors which mitigate the severity of the misconduct. *In re Buker,* 615 N.E.2d 436 (Ind. 1993). Although not put forth as such in the agreement, we attach some mitigating utility to the fact that, in regard to Count I, the respondent has conceded that his exaction of the entire retainer for the criminal case alone was improper and that some refund of the retainer was due the client.[3] Nonetheless, we are still confronted with the respondent's heavy-handed attempt to secure an inflated fee. His course of conduct suggests an objective to lay hand on as much remuneration as the client was willing to provide, regardless of the volume or novelty of legal service provided. In Count II, the respondent unilaterally decided to allow the adverse parties' motions for summary judgment to go unchallenged, and failed to even notify his client of the opposition's actions. His client was thus unable to participate intelligently in decisions concerning the objectives of the representation. *See Comment* to Prof.Cond.R. 1.4.

■ The parties have agreed to a thirty-day suspension from the practice of law, at the expiration of which the respondent will be automatically reinstated. We agree that the respondent's actions warrant suspension, and therefore approve the tendered agreement.

It is, therefore, ordered that the respondent, Loren J. Comstock, be suspended from the practice of law for a period of thirty days, beginning June 17, 1996.

Costs of this proceeding are assessed against the respondent.

**3.** We note that, at the time the parties' agreement was submitted to this Court, there was pending a civil action brought by the client

against the respondent. The respondent had deposited $7,500 in trust with the trial court pending resolution of that action.